1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,

11          Respondent,              No. CR S-02-0048 MCE DAD P

12      vs.

13   JAIME RIOS VIZCARRA,

14          Movant.          FINDINGS AND RECOMMENDATIONS

15   _____/

16          Movant has filed a motion to vacate, set aside, or correct his federal sentence

17   pursuant to 28 U.S.C. § 2255.  Therein, movant claims that he received ineffective assistance

18   from his trial counsel.  In opposing the motion for relief, respondent argues that movant's claims

19   are without merit.  Movant has filed a traverse.

20          Having considered all the papers filed by the parties and the record in this action,

21   for the reasons set forth below, the court will recommend that the motion be denied.

22                    **PROCEDURAL HISTORY**

23          On January 25, 2002, a criminal complaint was filed against movant, alleging that

24   he imported and conspired to import controlled substances into the United States and that he

25   laundered money to promote and carry on the importation of those controlled substances in

26   violation of 21 U.S.C. §§ 952, 963 and 18 U.S.C. §§ 1956(a)(1)(A)(I), 1956(a)(2)(A).  (Doc. No.

1

1.)  Movant's initial appearance before the court took place that same day, counsel was appointed

to represent him and a preliminary hearing was scheduled for February 8, 2002.  (Doc. No. 2.)

On February 7, 2002, a federal grand jury for the Eastern District of California indicted movant.

(Doc. No. 10.)  On February 8, 2002, movant was arraigned on that indictment.  (Doc. No. 11.)

On May 2, 2002, movant was indicted on a superseding indictment charging him

with two counts of money laundering, conspiring to distribute heroin and methamphetamine, and

conspiring to launder money.[1]  (Doc. No. 19.)  Movant was arraigned on the superseding

indictment on May 21, 2002.  (Doc. No. 20.)  On September 3, 2002, at movant's request, his

appointed counsel was relieved and new counsel was appointed.  (Doc. No. 24.)

Movant's trial commenced on October 8, 2003.  (Doc. No. 48.)  On October 23,

2003, a jury found him guilty on all counts.  (Doc. No. 60.)  On February 24, 2004, movant

appeared before the court and was sentenced to the custody of the U.S. Bureau of Prisons for a

188-month term of imprisonment.  (Doc. No. 83.)

Movant filed an appeal of his judgment of conviction in the Ninth Circuit Court of

Appeals on March 3, 2004.  (Doc. No. 89.)  On June 10, 2005, that court affirmed the judgment,

but remanded the matter to this court for sentencing proceedings consistent with the decision in

United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005) (en banc), and to consider whether

movant's sentence would have been materially different in light of the United States Supreme

Court's decision in United States v. Booker, 543 U.S. 220 (2005).  (Doc. No. 124.)  On January

10, 2006, the assigned district judge affirmed the sentence originally imposed and ruled that the

previously issued judgment would remain in effect.  (Doc. No. 141.)  Petitioner again appealed.

On December 11, 2006, the Ninth Circuit Court of Appeals filed a memorandum decision

affirming the district court's judgment and sentence.  (Doc. No. 158.)

/////

---

[1] Also indicted were movant's brother, Roberto Rios Vizcarra, and Genaro Aro Arteaga.
(Doc. No. 19.)  Movant's brother was tried with movant as a co-defendant.

On May 8, 2008, movant filed his § 2255 motion with this court to vacate, set aside, or correct his sentence on his own behalf. (Doc. No. 164 (hereinafter "Motion").) Respondent filed a response opposing the motion on July 25, 2008. (Doc. No. 172 (hereinafter "Response").) Movant filed a traverse on August 28, 2008. (Doc. No. 176[2] (herein after "Reply").)

**FACTUAL BACKGROUND**

On March 3, 1999, agents for the United States Customs Service arrested Jack Perkett, Frank Sandoval, and Travis Phillips at the Calexico California Port of Entry for attempting to smuggle approximately 2.8 pounds of heroin and 9.4 pounds of methamphetamine across the border into the United States in a 1989 Jeep Wagoneer.[3] (Reporter's Transcript ("RT") at 53-54, 77-83.) After interviewing Travis Phillips and Jack Perkett, agents learned that the group had intended to transport the drugs to Stockton, California. (Id. at 81-82.)

After the arrests, IRS agents identified approximately 320 transfers of money, using either Western Union or MoneyGram, totaling approximately $612,000 from Stockton to a small group of individuals in Mexico. (Id. at 713-15.)

At movant's trial, Frank Sandoval testified that on March 2, 1999, movant asked him to transport a vehicle to Mexico. (Id. at 195-96.) Movant then picked Sandoval up in the Wagoneer and the two traveled to Perkett's house, where Perkett and Phillips were waiting. (Id. at 197-99.) Sandoval, Perkett and Phillips then drove the Wagoneer to Mexico. (Id. at 199.) When the group attempted to cross the border from Mexico back into the United States, Sandoval knew there were drugs in the vehicle. (Id. at 203.) Sandoval had transported drugs

---

[2] Movant's traverse was mistakenly docketed on his co-defendant's/brother's file on the court's CM/ECF system. Movant and his brother share the same last name and criminal case number. There is no Doc. No. 176 on movant's docket and all references to Doc. No. 176 are to the Doc. No. 176 found on his brother's CM/ECF docket. The Clerk of the Court will be directed to correct the docket in this regard.

[3] Sandoval's fiancee, Bobbi Jean Harrison, was also in the vehicle and was arrested. (RT at 191.)

1   across the border at movant's request on three or four prior occasions.  (<u>Id.</u> at 205.)  Sandoval

2   also sent money to Mexico on behalf of movant approximately ten to fifteen times.  (<u>Id.</u> at 213.)

3          Phillips testified at trial that he knew movant "through some minor drug deals in

4   Stockton."  (<u>Id.</u> at 120.)  Phillips knew that he was going to be part of a group that drove the

5   Wagoneer to Mexico to transport drugs back to the United States, but never spoke with movant

6   because Phillips did not speak Spanish.  (<u>Id.</u> at 122-23.)

7          Christina Cloward testified at trial that she was movant's girlfriend and that she

8   sent money to Mexico at movant's request on approximately twenty occasions.  (<u>Id.</u> at 385, 410.)

9   Cloward also testified that she drove a vehicle from Stockton to Mexico on behalf of movant that

10  she believed had $25,000 in cash hidden inside.  (<u>Id.</u> at 420-21.)

**MOVANT'S CLAIMS**

12          Movant alleges that he received ineffective assistance from his trial counsel.  In

13  this regard, he argues that his counsel "failed to inform him of all possible plea options,"

14  specifically failing to advise movant about the benefits of an "open plea."  (Motion at 17.[4])

15  Movant asserts that his trial counsel was also ineffective because movant's sentence was based

16  "on a multi-object conspiracy" where the jury delivered a general verdict that did not specify

17  which offense was the target of the conspiracy, and his counsel failed to object to his sentence on

18  that basis.  (<u>Id.</u> at 19.)  Finally, movant argues that his trial counsel was ineffective because he

19  failed to object to the introduction of prior testimony by Perkett, after Pertkett refused to testify

20  on behalf of the government.  (<u>Id.</u> at 25-26.)

**LEGAL STANDARD**

22          A federal prisoner making a collateral attack against the validity of his or her

23  conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence

24  pursuant to 28 U.S.C. § 2255 filed in the court which imposed sentence.  <u>Tripati v. Henman</u>, 843

---

26      [4] Page number citations such as this one are to the page number reflected on the court's
CM/ECF system and not to page numbers assigned by the parties.

1  F.2d 1160, 1162 (9th Cir. 1988).  Under § 2255, the federal sentencing court is to grant relief if it

2  concludes that a prisoner in custody was sentenced in violation of the Constitution of laws of the

3  United States.  United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999).

4          In reviewing a motion brought pursuant to § 2255, a federal court shall hold an

5  evidentiary hearing "unless the motion and the files and records of the case conclusively show

6  that the prisoner is entitled to no relief."  28 U.S.C. § 2255.  See also United States v. Zuno-

7  Arce, 339 F.3d 886, 889 (9th Cir. 2003).  However, to be entitled to an evidentiary hearing the

8  movant must provide specific factual allegations which, if true, state a claim on which relief

9  under § 2255 could be granted.  United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003);

10  United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984).

11                                              **ANALYSIS**

12          As noted above, all of movant's claims involve allegations that he recieved

13  ineffective assistance of counsel.  Below, the court will address the legal standards governing

14  such claims before turning to each of movant's specific claims.

15  I.  Legal Standards Governing Ineffective Assistance of Counsel Claims

16          The Sixth Amendment guarantees criminal defendants the right to effective

17  assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984) (citing McMann v.

18  Richardson, 397 U.S. 759, 771 n. 14 (1970)); United States v. Span, 75 F.3d 1383, 1386 (9th Cir.

19  1996).  Thus, under the Sixth Amendment a defendant is entitled to "a reasonably competent

20  attorney, whose advice is within the range of competence demanded of attorneys in criminal

21  cases."  United States v. Cronic, 466 U.S. 648, 655 (1984) (internal quotations omitted).  The

22  purpose of the effective assistance guarantee is "to ensure that criminal defendants receive a fair

23  trial."  Strickland, 466 U.S. at 689.  Toward that end, the Sixth Amendment requires that an

24  accused be assisted by an attorney "'who plays the role necessary to ensure that the trial is fair.'"

25  Frazer v. United States, 18 F.3d 778, 782 (9th Cir. 1994) (quoting Strickland, 466 U.S. at 685).

26  /////

1   To support a claim of ineffective assistance of counsel, a movant seeking relief
2   under § 2255 must first show that, considering all the circumstances, counsel's performance fell
3   below an objective standard of reasonableness.  Strickland, 466 U.S. at 688.  Movant must
4   therefore identify the acts or omissions that are alleged not to have been the result of reasonable
5   professional judgment.  Id. at 690.  The court must then determine whether, in light of all the
6   circumstances, the identified acts or omissions were outside the wide range of professional
7   competent assistance.  Id.; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  "There is a strong
8   presumption that counsel's performance falls within the 'wide range of professional assistance.'"
9   Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There
10  is in addition a strong presumption that counsel "exercised acceptable professional judgment in
11  all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing
12  Strickland, 466 U.S. at 689).

13  Second, movant must affirmatively prove prejudice.  Strickland, 466 U.S. at 693.
14  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional
15  errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable
16  probability is "a probability sufficient to undermine confidence in the outcome."  Id.  See also
17  Williams v. Taylor, 529 U.S. 362, 391 (2000); Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir.
18  2000).  A reviewing court "'need not determine whether counsel's performance was deficient
19  before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . .
20  . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient
21  prejudice . . . that course should be followed.'"  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir.
22  2002) (quoting Strickland, 466 U.S. at 697).

23      A.  Inadequate Advice Concerning Alternatives to Trial

24  Movant asserts that his trial counsel was ineffective for failing to advise him of
25  his ability to plead guilty, without a plea agreement, and thereby receive a three-level reduction
26  in his advisory sentencing guideline calculation based on his acceptance of responsibility.  (Mot.

6

at 17.)  He argues that his trial counsel should have realized "the overwhelming weight of the evidence" against movant and that movant "continually objected to cooperating with the government," and therefore "should have informed him of a third option: entering an open plea and receiving a three-level reduction in his offense level for acceptance of responsibility."  (Id.) Movant claims that had his trial counsel "properly advised [him] about the conspiracy law . . . he would have entered into an open plea of the counts of the indictment."  (Id.)  Movant argues that by pleading guilty he would have only been exposed to a likely sentence of between 135 and 168 months, much lower than the 188 months he received.  (Id. at 17-18.)

Respondent rebuts movant's claim by submitting the declaration of movant's trial counsel, Gilbert Roque.  Roque states that he was appointed to represent movant on or about September 3, 2002, replacing movant's prior appointed counsel, and after the May 2, 2002, superseding indictment had been filed.  (Response, Decl. Roque at 1.)  According to attorney Roque, at that time he discussed with movant "the entire case from the inception, including all discovery, all filings, file notes and correspondence."  (Id.)  Attorney Roque declares that he reviewed with movant the charges and the penalties, explained the sentencing guidelines, including adjustments, and discussed with movant his "options in going to trial" or resolving the matter "short of trial."  (Id.)

Attorney Roque states that a plea offer was made to movant by the government prior to his appointment that called for movant to receive a ten-year sentence.  (Id. at 2.)  The agreement however was a "package deal" requiring movant's co-defendant to also agree to plead guilty.  (Id.)  Attorney Roque reviewed the plea offer with movant but movant "was not interested in accepting any plea offer made by the government."  (Id.)

Attorney Roque declares that he continued negotiations with the government and that other plea offers were made to movant.  (Id.)  Some of those offers required movant to cooperate with the government but others did not.  (Id.)  Attorney Roque states that because the offers were "package deals" it was difficult to resolve the case by plea agreement because

1   movant's co-defendant was facing a substantially longer sentence than movant and thus,

2   presumably, was reluctant to agree to plead guilty . (Id.)

3                     According to attorney Roque, movant:

4           always had the option of pleading to his charges alone.  However,
            the potential sentence for him would have been much higher than
5           what was being offered.  At no time, having this knowledge, did
            [movant] express a desire to plead to the charges straight up.

6

7   (Id.)

8                     Movant responds to his attorney's declaration by noting that "it is irrelevant that

9   [he] may have received a better sentence had he accepted the proposed plea agreement because

10  [he] was never going to provide information against anybody."  (Reply at 6.)  He reiterates that

11  had he been:

12          fully and accurately informed of the possibility to enter an open
            guilty plea and become eligible for the three-level adjustment for
13          acceptance of responsibility, [movant] would have pled guilty
            instead of proceeding to trial.

14  (Id. at 7.)

15                    At the outset the court observes that movant's assertion that had he entered an

16  "open guilty plea" he would have been entitled to a three-level downward adjustment in his

17  offense level under the sentencing guideline is incorrect.  Under the U.S. Sentencing Guidelines a

18  defendant who "clearly demonstrates acceptance of responsibility for his offense" may have his

19  offense level decreased by two levels.  U.S.S.G. § 3E1.1.  Under certain circumstance the

20  government may move for the decrease of one additional level.  (Id.)  Thus, had movant pled

21  guilty to all charges without a plea agreement, he would have at most received a two-level

22  downward adjustment in his offense level.[5]

23  _____

24          [5] In theory, the government could have moved for the decrease of an additional level.
    However, such a motion by the government on behalf of a defendant who had refused to
25  cooperate, had declined to enter a plea agreement and who had plead guilty without a plea
    agreement, would be highly unlikely.  As movant acknowledged, he "continually objected to
26  cooperating with the government."  (Mot. at 17.)

                                            8

1    Moreover, movant was still eligible for a two-level downward adjustment in his

2    offense level under the sentencing guidelines, even after he proceeded to trial and was found

3    guilty, if he clearly demonstrated acceptance of responsibility for his offenses.  This was

4    explained to movant by his trial counsel, whose declaration filed with the court states that

5    counsel informed movant about the operation of the three-level and two-level downward

6    adjustments for acceptance of responsibility.  (Response, Decl. Roque at 2.)  Counsel specifically

7    declares that he "explained that, without the government's motion, [movant] could still get a

8    two-level reduction for acceptance of responsibility if he chose to go to trial and did not prevail."

9    (Id.)

10    Seeking that two-level downward adjustment was, however, contingent on

11    movant's acceptance of responsibility.  (Id.)  However, in a letter dated November 22, 2003,

12    movant asked the court for a new trial stating that, "the evedence (sic) that the U.S. Attorney had,

13    was not right and my lawyer never difended (sic) me right, and I have my right's (sic) to git (sic)

14    one."  (Doc. No. 68.)  Moreover, on February 24, 2004, the day of his original sentencing,

15    movant submitted three additional letters to the court.  In one of those letters, identified as

16    "Sentencing Memorandum An (sic) Exhibits" movant stated to the court that the evidence

17    introduced against him at his trial was "loose and the witnesses were weak."  (Doc. No 78.)  He

18    went on to attack the credibility of the government's witnesses, denied buying the Wagoneer, and

19    claimed that he was convicted based on mere "speculation."  (Id.)  Movant further argued in the

20    letters to the court that his trial was not fair because of "all the false testimony of witnesses" and

21    that the jury found him guilty based on "speculations by the government."  (Id.)

22    In another of those letters, addressed directly to the assigned district judge,

23    movant stated that there were "so many discrepances (sic) on (sic) my trial and I feel that I am

24    getting convicted with not (sic) reasonable cause."  (Doc. No. 82.)  Movant went on to claim that:

25          The laundery (sic) conspiracy was also loosely run in that friends
      and acquaintances send money to Mexico, I'm not in a position
26          before or now to know or prevent people that I know to (sic) send

1  money to Mexico or elsewhere.  However the jury found me guilty
   for this case, and after I have to pay and get punish (sic) to make a
2  (sic) "exemple" (sic) to deter other (sic) from comitting (sic)
   similar offense.
3

4  (Doc. No. 82.)  Movant then requested a downward departure from his sentencing guideline

5  range based on his status as a "deportable alien," citing the decision in United States v. Guzman,

6  236 F.3d 830 (7th Cir. 2001).

7          Even assuming arguendo that his counsel failed to inform him of his ability to

8  plead guilty absent a plea agreement and was thereby deficient, in order to prevail on this claim

9  movant must still show that there is a reasonable probability that, but for his counsel's

10 unprofessional errors, the result of the proceeding would have been different.  Here, if movant

11 had pled "open," and accepted responsibility, he would have been eligible for consideration of a

12 two-level downward adjustment in his offense level, not three-level adjustment as he asserts.

13 Most importantly, that same two-level downward adjustment based on the acceptance of

14 responsibility was available to movant following his trial and conviction.  Movant, however, not

15 only affirmatively failed to accept responsibility but repeatedly questioned the basis for his

16 conviction and maintained his innocence.

17         It appears improbable, given movant's post-trial protests, that he would have been

18 willing to plead guilty prior to his trial, without the benefit of any bargain with the government,

19 in hopes of getting a two-level downward adjustment in his offense level based on acceptance of

20 responsibility when he was unwilling to accept responsibility even after he had been convicted at

21 trial.  In any event, the very same downward adjustment in his offense level that movant claims

22 he was denied by his counsel's ineffectiveness was available to him after his trial and conviction.

23 At that time it was movant's refusal to accept responsibility, and not any failure on behalf of his

24 trial counsel, that rendered the two-level downward adjustment unavailable to him.

25         As such movant has failed to show that there is a reasonable probability that, but

26 for his counsel's unprofessional errors, the result of the proceeding would have been different.

10

1   Accordingly, movant is not entitled to relief under 28 U.S.C. § 2255 with respect to this aspect of

2   his claim of ineffective assistance of counsel.

3        B.   Failure to Object at Sentencing

4        Movant asserts that the jury's finding of guilt as to the conspiracy charges was a

5   "general verdict" on a "multi-object conspiracy." (Mot. at 19.)  He claims that the jury's verdict

6   did not establish whether of the object of the conspiracy was to distribute heroin, distribute

7   methamphetamine or launder money. (Id. at 20.)  "In such a case," movant argues, the

8   sentencing court must find that defendant conspired to commit a particular object offense beyond

9   a reasonable doubt. (Id.)

10        Movant claims that the record is silent as to whether the court "explicitly or

11  implicitly found beyond a reasonable doubt" that he conspired to commit any of the charged

12  offenses. (Id. at 21.)  Movant argues that based on the jury's "general verdict" he was only

13  subject to a sentencing range of 87 to 108 months. (Id. at 22.)  Based on this assumption, movant

14  argues that his counsel was ineffective for failing to object to the 188 month term of

15  imprisonment to which he was sentenced. (Id. at 22-23.)

16        As noted above, to support a claim of ineffective assistance of counsel, movant

17  must first show that, considering all the circumstances, counsel's performance fell below an

18  objective standard of reasonableness. Strickland, 466 U.S. at 687-88.  However, "the Supreme

19  Court has not decided what standard should apply to ineffective assistance of counsel claims in

20  the noncapital sentencing context.  Consequently, there is no clearly established law in this

21  context." Cooper-Smith v. Palmateer, 397 F.3d 1236, 1244 (9th Cir. 2005).  Under any standard,

22  however, this aspect of movant's ineffective assistance claim is meritless.

23        The jury form used at movant's trial was identified as a "Special Verdict Form"

24  and read:

25  /////

26  /////

11

We the jury, find [movant]:

I.  As to Count One, conspiracy to distribute and possess with intent to distribute more than one kilogram of heroin in violation of Title 21, United States Code, Section 846 and 841(a)(1): Guilty

II.  As to Count One, conspiracy to distribute and possess with intent to distribute more than 500 grams of methamphetamine in violation of Title 21, United States Code, Section 846 and 841(a)(1): Guilty

III.  As to Count Two, conspiracy to launder monetary instruments in violation of Title 18, United States Code, Section 1956(h): Guilty

IV.  As to Count Three, laundering of monetary instruments in violation of Title 18, United States Code, Section 1956(a)(2)(A): Guilty

V.  As to Count Four, laundering of monetary instruments in violation of Title 18, United States Code, Section 1956(a)(2)(A): Guilty

(RT at 934-35, Doc. No. 61.)[6]

It is therefore apparent from the record that movant's jury returned a special verdict, specifying that they had found movant guilty of conspiracy to distribute more than one kilogram of heroin, conspiracy to distribute more than 500 grams of methamphetamine, and conspiracy to launder monetary instruments.  Any objection by movant's trial counsel that his client's sentence was improper because the jury returned a "general verdict" would have therefore been futile and meritless.  An attorney's failure to make a meritless objection or motion does not constitute ineffective assistance of counsel.  Jones v. Smith, 231 F.3d 1227, 1239 n. 8 (9th Cir. 2000) (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)).  See also Rhoades v. Henry, 596 F.3d 1170, 1179 (9th Cir. 2010) (counsel did not render ineffective assistance in failing to investigate or raise an argument on appeal where "neither would have gone

---

[6] The actual jury verdict form, which can not be recreated here, allowed the jury to place a check mark next to either "Guilty," or "Not-Guilty," for each item above.  Movant's jury placed a check next to "Guilty" with respect to each count in question.  (Doc. No. 61.)

1  anywhere"); <u>Matylinsky v. Budge</u>, 577 F.3d 1083, 1094 (9th Cir. 2009), <u>cert</u>. <u>denied</u>, ___U.S.___

2  (2010) (counsel's failure to object to testimony on hearsay grounds not ineffective where

3  objection would have been properly overruled); <u>Rupe v. Wood</u>, 93 F.3d 1434, 1445 (9th Cir.

4  1996) ("the failure to take a futile action can never be deficient performance").

5          Under the circumstances presented here, movant's trial counsel was not deficient

6  for failing to argue that movant's sentence was not supported by the verdict returned by the jury.

7  Accordingly, movant is not entitled to relief under 28 U.S.C. § 2255 with respect to this aspect of

8  his claim of ineffective assistance of counsel.

9          C.  <u>Perkett's Testimony</u>

10         Movant argues that after the prosecutor called Jack Perkett to testify, Perkett was

11  declared a hostile witness and the prosecutor was allowed to introduce "a lengthy series of

12  leading questions of Perkett's confession and prior testified statements" from Sandoval's trial.

13  (Motion at 25.)  Movant asserts that he was denied the ability to cross-examine Perkett due to his

14  counsel's failure to object to the introduction of these statements into evidence.  (<u>Id.</u> at 26.)

15  Movant claims that "the admission of Mr. Perkett's out [of] court statements, allegedly

16  testimonial, through the prosecutor violates the confrontation clause without counsel placing any

17  objection at all during [movant's] trial nor on appeal constituted ineffective assistance of

18  counsel." (Motion at 23.)

19         The record establishes that at movant's trial, the prosecutor called Jack Perkett to

20  testify. (RT at 352.)  After answering some initial background questions, Perkett was asked if

21  there was anybody in the courtroom he recognized.  (<u>Id.</u>)  Perkett answered no.  (<u>Id.</u>)  Shortly

22  thereafter the prosecutor was granted permission to treat Perkett as a hostile witness so that she

23  could be permitted to pose leading questions.  (<u>Id.</u> at 354.)  Perkett continued to deny that he

24  knew movant or his co-defendant, that he had ever purchased drugs from movant, and claimed

25  memory loss due to the abuse of drugs and alcohol.  (<u>Id.</u> at 354-56.)  Perkett also denied that he

26  was threatened on the way to court or that he was fearful of testifying.  (<u>Id.</u> at 357.)

1          Perkett also denied taking a bus from Stockton to Mexico with tickets bought by

2    movant, and meeting movant's co-defendant.  (Id. at 358.)  Perkett denied seeing movant cut

3    heroin.  (Id. at 359.)  Perkett then denied remembering meeting with the prosecutor just two days

4    earlier.  (Id. at 360.)  When asked if the prosecutor could refresh Perkett's memory, Perkett

5    stated, "You can't refresh my memory."  (Id.)  The prosecutor then asked if Perkett remembered

6    asking for a sentence reduction in exchange for his testimony and if he remembered asking the

7    prosecutor "What if you asked me a bunch of questions, and I just said no."  (Id. at 361-62.)

8    Perkett replied that he did not recall that exchange.  (Id. at 362.)

9          Perkett then testified that he did not remember being a passenger in the Wagoneer

10   when the vehicle was driven from Stockton to Mexico.  (Id. at 366.)  Perkett testified that he did,

11   however, remember getting arrested in that vehicle while coming back from Mexico, along with

12   Sandoval and Phillips, but denied meeting movant's co-defendant while in Mexico.  (Id. at 367-

13   68.)  Perkett also denied previously telling the prosecutor that he had transported drugs from

14   Mexico to Stockton for movant and his co-defendant.  (Id. at 371.)

15          After the lunch recess Perkett's counsel advised the court that Perkett indicated

16   that he would not answer any additional questions.  (Id. at 373.)  The jury was then brought into

17   the courtroom and Perkett's questioning resumed.  (Id. at 377.)  After Perkett refused to answer

18   the next question, and refused the court's order to answer the question, Perkett was cited for

19   contempt of court and removed from the courtroom.  (Id. at 377-79.)

20          Movant claims that his "right of confrontation under the Sixth Amendment [had]

21   been violated and his counsel did nothing to remedy it during his trial nor on appeal."  (Motion at

22   25.)  Movant argues that once his trial counsel:

23            failed to object at trial [to] the introduction of a witness (sic)
              testimonial statements in which he incriminated [movant] in the
24            crime without having the opportunity to cross-examine the
              government's witness, he ceased to function as defense counsel.
25

26   (Id. at 26-27.)  However, the record belies movant's argument in this regard.

14

1    No "testimonial statements" attributed to Perkett were ever entered into evidence

2  at movant's trial.  It is true that the prosecutor asked Perkett if he had previously "testified

3  differently" at a "trial in San Diego" at which he admitted that he had purchased and transported

4  drugs for movant.  (Id. at 355-56.)  Perkett answered that he might have.  (Id.)  Such testimony,

5  however, is not the same as allowing the introduction of "testimonial statements."

6    Nevertheless, because Perkett was a hostile witness the prosecutor was allowed to

7  ask Perkett leading questions.  Movant does not identify any basis upon which his counsel could

8  have objected to this line of questioning or to any specific questions posed to the witness.[7]

9  Movant has thus failed to show that his counsel's performance fell below an objective standard

10  of reasonableness.  Moreover, assuming arguendo that his trial counsel's performance was

11  deficient, movant's claim of ineffective assistance of counsel would still fail because he is unable

12  to establish any prejudice.

13    After Perkett was ordered to the holding tank, movant's counsel requested a

14  sidebar conference.  (Id. at 379.)  At sidebar movant's counsel requested a mistrial arguing:

15        It's our feeling that the jury has been tainted by this witness and
         cannot be rehabilitated.  We think that regardless of what occurs
16        with this witness, whether [the prosecutor] was able to ask him
         questions or not, based on his performance this morning and his
17        attitude this afternoon, I think the jury has been fully tainted, and,
         in fact, may have been to the benefit of the prosecution - - was to
18        the benefit of the prosecution because it appeared to us, obviously,
         that he had a whole lot of knowledge, which he was not willing to
19        testify to.

20  (Id.)  Counsel for movant's co-defendant joined in that request adding the additional argument

21  that the defendants were denied the opportunity to cross-examine Perkett.  (Id. at 380.)

22    The assigned district judge denied the defense motion for a mistrial but did order

23  Perkett's testimony stricken, agreed to later instruct the jury specifically on this matter, and then

24  did instruct the jury as follows:

25  _____

26    [7] Movant's counsel could not have known at that time that Perkett would eventually be
    held in contempt and would be unavailable for cross-examination.

Ladies and gentlemen, earlier this morning we had a witness, Mr. Perkett, who was called to testify. As you will recall, [the prosecutor] began to ask a series of questions. Very quickly into that time period the court declared him to be a hostile witness even though the government actually called him as their own witness.

As you have just seen, he has refused to answer the most recent questions and has indicated to the Court that he is not going to answer anymore questions that are propounded to him. Accordingly, as you've also heard, I've cited him for contempt of court based upon his failure to follow my direct order. As such, he will not be available for further testimony. As such, also, the defense will not be able to cross-examine him.

Accordingly, I am now going to strike the entirety of the questions and the answers that were asked of Mr. Perkett both this morning and this afternoon. As I instructed you at the beginning of the trial, if at any time that court orders that a particular portion of testimony be stricken, you are to totally disregard that testimony and/or the questions that were asked to elicit that testimony. I'm going to instruct you further that once you begin your deliberations, the issue of that stricken testimony is not to enter into your deliberations in any way nor is it to be discussed or considered by any of you. That will conclude the instruction I will give you at this time.

(Id. at 381-82.)[8]

Thus the entirety of Perkett's testimony was stricken from the record, the jury was ordered to totally disregard the answers given by him as well as the questions posed, and the jury was specifically instructed that the stricken testimony was not to be considered in any way during their deliberations. A jury is presumed to have obeyed the court's instructions. Zafiro v. United States, 506 U.S. 534, 540 (1993); Taylor v. Sisto, 606 F.3d 622, 626 (9th Cir. 2010).

Furthermore, the evidence of movant's guilt, outside of Perkett's testimony, was as movant previously acknowledged, overwhelming. Sandoval testified that movant recruited him to transport drugs from Mexico to Stockton on multiple occasions, including on March 2, 1999. Cloward testified that she sent money to Mexico at movant's request approximately

---

[8] Prior to the jury's deliberations the trial judge instructed the jury that "[t]estimony that has been excluded or stricken or that you have been instructed to disregard is not evidence and must not be considered." (RT at 910.)

1   twenty times and drove a vehicle she believed had $25,000 hidden in it from Stockton to Mexico

2   on behalf of movant.  Sandoval also sent money to Mexico approximately ten to fifteen times at

3   movant's request.

4             Presented with this evidence, even if movant's counsel had somehow prevented

5   Perkett from testifying at all, movant has failed to show that there is a reasonable probability that

6   the result of his trial would have been different.  Movant has therefore failed to demonstrate

7   prejudice.

8             Accordingly, for the reasons stated above, movant is not entitled to relief under 28

9   U.S.C. § 2255 with respect to this aspect of his claim of ineffective assistance of counsel.

10                                          CONCLUSION

11            For the reasons set forth above,  IT IS HEREBY RECOMMENDED that

12  movant's February 22, 2008 motion to vacate, set aside, or correct his sentence pursuant to 28

13  U.S.C. § 2255 (Doc. No. 164) be denied.

14            These findings and recommendations are submitted to the United States District

15  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-

16  one days after being served with these findings and recommendations, any party may file written

17  objections with the court and serve a copy on all parties.  Such a document should be captioned

18  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

19  shall be served and filed within seven days after service of the objections.  Failure to file

20  objections within the specified time may waive the right to appeal the District Court's order.

21  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

22  1991).  In any objections he elects to file, petitioner may address whether a certificate of

23  appealability should issue in the event he elects to file an appeal from the judgment in this case.

24  /////

25  /////

26  /////

See Rule 11, Federal Rules Governing Section 2255 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: July 31, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
vizcarra.J.48.2255

18